GARRAHAN
v.
CURLEY.

---

## EULALIE AND HER DESCENDANTS v. LONG & MABRY.

Under Article 3510 of the Code a slave may acquire freedom by prescription.

Article 3510 of the Code was not intended to introduce a mode of emancipating slaves, or of changing their *status*. It treats of the slave as being still a slave after the ten years enjoyment of his freedom. But it prohibits the master from restraining him. The public have an overruling interest in the question of his *status*; and the laws by which the manumission of slaves has always been so sedulously guarded from abuse, are all in vain, if the State can be compelled to recognize as unconditionally free, with liberty to remain in the State, and without regard to age, character, and other legal qualifications, all such slaves as their masters may choose to turn loose for the space of ten years. SPOFFORD, J., with whom concurred LEA, J.

Code, 177.

APPEAL from the First District Court of New Orleans, *Robertson*, J.
*S. L. Johnson*, for plaintiffs. *Marr*, for defendants and appellants.

BUCHANAN, J. The plaintiffs claim that they are free by prescription, and that the defendants illegally and by violence have taken possession of their persons and treat them as slaves. The defendants at first excepted that the petition disclosed no legal cause of action; which exception having been overruled by this court, (see the decision in 9th Annual, page 9,) the defendants have answered, setting up title to the plaintiffs in themselves, by virtue of a sale from one *Loftin*.

It was clearly ruled by this court, when the cause was before us previously, that the law (Civil Code, Art. 3510) recognizes prescription as one of the modes in which a slave may acquire a right to freedom. The same doctrine was held by our predecessors in *Spalding* v. *Taylor*. 1 An., 197, which was a suit for damages against the owners of a steamboat for carrying plaintiff's slave away. And in *Verdun* v. *Splane*, 6 Rob., 530, when the slave was the actor, through his mother, Judge Martin did not dispute the right of a slave generally to claim his freedom under the Article 3510 of the Code, but denied the exercise of it in that particular case, because the tender age of the slave precluded the presumption that it had been the intention of the master, in leaving him in the possession of his mother, (who was free,) to recognize the child as also free.

The counsel of the defendants has renewed the argument, so strongly urged by him on the former trial, that the peculiar phraseology of the Article 3510 only excludes the right of action of the master to reduce his slave to possession after suffering him to enjoy his freedom during a certain length of time. And he relies upon the case of *Meillun* v. *Goupey*, 8 N. S., 129, as negativing the right to freedom derived from prescription. But the case of *Meillun* v. *Coupey* arose under the Old Code which did not contain an Article analogous to the Article 3510 of the Code of 1825. Compare the language of Judge Martin in the decision of this case with that in *Verdun* v. *Splane*, already cited, and the influence of the change of legislation which had taken place in the interval upon the doctrine of the court will be at once perceived. See also the remarks of the court in *Baker* v. *Tabor*, 7 An., 556.

EULALIE
*v.*
LONG.

The plaintiff *Eulalie* was formerly the slave of *Simon Porche*, who died about thirty-five years before the institution of this suit, leaving his widow his universal legatee. Some years before *Simon Porche's* death, *Eulalie*, with his permission, married a free colored man, an illegitimate brother of *Porche's* wife, who had a farm in *Porche's* neighborhood; and lived with her husband in the full enjoyment of her freedom during the whole lifetime of *Porche*, and of his widow, being more than thirty years, with their knowledge and consent. Indeed it is proved that *Mrs. Widow Porche* frequently spoke of formally emancipating *Eulalie* and her children, (the other plaintiffs) but never carried her design into effect. After the death of *Mrs. Widow Porche*, *Eulalie* and her children and grandchildren appear to have been taken by force from her residence in Pointe Coupée, notwithstanding an ineffectual resistance on the part of her aged husband, and brought to a slave mart in New Orleans, where they were conveyed as slaves for life to the defendants.

There is no doubt from the evidence that the heirs of *Mrs. Porche* were privy to this abduction of the plaintiffs from Pointe Coupée, yet they do not figure in the conveyance to defendants; neither, although the defendants ostensibly paid twelve thousand dollars in cash for the plaintiffs, do they make any call in warranty.

Their bill of sale gives no origin to the vendor's title. The production of a certificate of mortgages is dispensed with; and their vendor is declared by defendants to be dead and insolvent. These are circumstances calculated to inspire a suspicion that the true parties in interest are keeping out of sight. And if so, the reason may be easily imagined.

Judgment affirmed, with costs.

SPOFFORD, J., with whom concurred LEA, J. I concur in the judgment, but I do not think the Article 3510 of the Code was intended to introduce a mode of emancipating slaves, or of changing their *status*. Its cautious phraseology shows that such a result was not contemplated. "If a master suffer a slave to enjoy his liberty for ten years, during his residence in the State, or for twenty years while out of it, he shall lose all right of action to recover possession of the *slave*, unless the slave be a runaway or fugitive." The Article treats of the slave as being still a slave after the ten years' enjoyment of his freedom. But it prohibits the master from restraining him. The public has an overruling interest in the question of his *status;* and the laws by which the manumission of slaves has always been so sedulously guarded from abuse are all in vain if the State can be compelled to recognize as unconditionally free, with liberty to remain in the State, and without regard to age, character, or other legal qualifications, all such slaves as their masters may choose to turn loose for the space of ten years.

I adhere to the doctrine of the cases of *Meillun* v. *Coupey*, 8 N. S., 128, and *Ned Baker* v. *Tabor*, 7 An., 556.

Even if the plaintiffs never were emancipated, as, after enjoying their freedom for thirty years, possibly it might be presumed they were, still I think the Article 3510 of the Code may so far avail them as to enable them to invoke the protection of the courts against a manifest usurpation by the defendants. C. C., 177.